Justice Dirk M. Sandefur, concurring.
¶41 I write separately to place this anomalous litigation in proper analytical context and to point out where I think the Court unnecessarily stopped short on the issue and record presented. As a preliminary matter, I concur with the Court's central holding that the amount of an insured's unilateral settlement of a third-party claim is not the presumed measure of damages for breach of the implied contract and related statutory duty to settle within policy limits, as is the case with a breach of the duty to defend. I thus concur in reversal of the District Court's entry of judgment against Junkermier as far as it goes.
*947 ¶42 However, based on and narrowly limited to what the parties actually litigated on the merits in the uniquely conflated litigation below, I would go further and recognize that the gravamen of the issue actually litigated by the insurer (New York Marine) and the insured (through its assignees) in the so-called "reasonableness hearing" was the damages element of what is in essence a common-law breach of contract claim or, alternatively, a statutory bad faith claim. I would recognize that, regardless of the shifted burden of proof resulting from the erroneous application of a presumed measure of damages, New York Marine had a full and fair opportunity to contest on the merits the amount of damages claimed as a result of its alleged breach of duty to settle within policy limits. Limited to the anomalous course of litigation and the issue actually litigated between insured and insurer in this case, I would thus further hold that the amount determined reasonable by the District Court below was in substance a full and final adjudication of the damages resulting from the alleged breach of duty, thus implicating collateral estoppel in the event of any parallel-pending or subsequent adjudication as to whether New York Marine breached its implied contract or parallel statutory duty to settle.[1]
***338 ¶43 In so holding, I would clarify that the pertinent issue regarding the validity and effect, if any, of an insured's unilateral settlement with a third-party claimant is not whether the insurer "improperly abandon[ed] its insured" but, rather, whether the insurer materially breached the insurance contract by unreasonably failing to settle within limits, thus, as a matter of blackletter contract law, relieving the insured of reciprocal contract duties to the insurer. Accordingly, I would recognize that, as a contract law consequence of a material breach of the insurance contract unaffected by the UTPA, an insured may unilaterally settle a third-party claim upon an alleged breach of the implied contract duty to settle. However, I would further recognize that, subject to the ordinary burden of proof and available defenses, the insured thereby assumes the risk of subsequently proving, on a separate contract or statutory bad faith claim against the insurer, the alleged breach of implied contract or statutory duty to settle and the resulting measure of damages without presumption. I would clarify that, if an insured further unilaterally stipulates to an adverse third-party judgment in return for a non-execution covenant prior to asserting a contract or statutory claim against the insurer, the third-party claimant in turn assumes the risk of proof otherwise on the insured.
¶44 Liability insurers have express contract duties to defend and indemnify insureds within policy limits against covered third-party liability. Unless the terms of the policy clearly and unequivocally exclude coverage, the duty to defend arises immediately upon tender of a third-party claim alleging facts, which if taken as true, qualify all or part of the claim(s) for coverage under the terms of the policy. Farmers Union Mut. Ins. Co. v. Staples , 2004 MT 108, ¶¶ 21-22, 321 Mont. 99, 90 P.3d 381. If the tender involves multiple related claims against the insured, the insurer must immediately defend the insured against all even if only one potentially triggers coverage. State Farm Fire & Cas. Co. v. Schwan , 2013 MT 216, ¶ 16, 371 Mont. 192, 308 P.3d 48. Though doing so does not vitiate or preclude a breach of contract or related statutory duty if the failure to acknowledge coverage was nonetheless unreasonable under the circumstances, we have repeatedly admonished that, as a matter of fact, prudence may often require an insurer to immediately defend under a reservation of rights regarding a bona fide coverage question and then promptly file a ***339 separate declaratory judgment action to resolve the dispute. *948 J & C Moodie Props., LLC v. Deck , 2016 MT 301, ¶ 22, 385 Mont. 382, 384 P.3d 466 (citing various cases).
¶45 Though we have imprecisely analyzed it as an "abandonment" of the insured, see Opinion, ¶¶ 22, 32; State Farm Mut. Auto. Ins. Co. v. Freyer , 2013 MT 301, ¶ 34, 372 Mont. 191, 312 P.3d 403, an insurer's breach of the duty to defend is more correctly viewed as a material breach of the insurance contract, thus relieving the insured of reciprocal contract duties (i.e., to cooperate and relinquish control of the defense to the insurer) and freeing the insured to unilaterally settle a third-party claim, whether with or without an accompanying confession of judgment and assignment of rights in return for a covenant not to execute. See Abbey/Land, LLC v. Glacier Constr. Partners, LLC , 2019 MT 19, ¶ 34, 394 Mont. 135, 433 P.3d 1230 ( Abbey/Land II ); J & C Moodie , ¶ 21 ; Tidyman's Mgmt. Servs. Inc. v. Davis , 2014 MT 205, ¶¶ 23-25, 33, 376 Mont. 80, 330 P.3d 1139 ( Tidyman's I ); Staples , ¶¶ 27-34 ; Restatement (Second) of Contracts §§ 229, 235(2), 236 - 37, 243 (Am. Law Inst. 1981). When included with a unilateral settlement, an insured's confession of judgment and assignment of rights allows the third-party claimant, standing in the shoes of the insured, to seek relief from the insurer based on the alleged breach of the duty to defend, with the amount of the stipulated judgment the presumed measure of damages for the breach. Abbey/Land II , ¶ 34 ; J & C Moodie , ¶ 21 ; Tidyman's I , ¶ 41 ; Staples , ¶¶ 27-34. Ordinarily, the party alleging a breach of duty ultimately has the burden of proving the asserted breach and resulting damages. See §§ 26-1-401 through -403, MCA. However, in this extraordinary context, equity shifts the burden of proof on damages due to the dire consequences of breach of the duty to defend,[2] thus rendering the amount of any adverse judgment against the insured, along with defense costs, the presumed measure of damages caused by the breach. See Abbey/Land II , ¶ 34 ; J & C Moodie , ¶ 21 ; Tidyman's I , ¶¶ 23-25, 33, 41 ; Staples , ¶¶ 27-34; Indep. Milk & Cream Co. v. Aetna Life Ins. Co. , 68 Mont. 152, 157-58, 216 P. 1109, 1110-11 (1923) (applying § 8169, R.C.M. (1921), now §§ 28-11-316 and -317, MCA ). The burden thus falls upon the insurer to rebut the presumed measure of damages ***340 by proving that the unilateral settlement was collusive or otherwise unreasonable. Abbey/Land II , ¶¶ 34-35, 41 ; J & C Moodie , ¶¶ 21, 33 ; Tidyman's I , ¶¶ 41, 47-48 ; Staples , ¶¶ 27-34 ; Indep. Milk , 68 Mont. at 157-58, 216 P. at 1110-11.
¶46 Distinct from the duty to defend, an insurer has an express contract duty to indemnify the insured within policy limits for covered losses. Breach of the duty to indemnify generally does not occur until an insurer refuses or fails to pay within policy limits where "established facts" trigger policy coverage and the extent of the covered damages are either not in dispute or "clearly exceed policy limits." Freyer , ¶ 27. For this purpose, "established facts" are material facts not disputed, or previously adjudicated in contested litigation, between the insured tortfeasor and the third-party claimant. See Freyer , ¶ 27. See also Skinner v. Allstate Ins. Co ., 2005 MT 323, ¶¶ 18-19, 329 Mont. 511, 127 P.3d 359 (duty to indemnify not triggered until disputed factual issues regarding insured's liability determined in underlying litigation); Northfield Ins. Co. v. Mont. Ass'n of Ctys. , 2000 MT 256, ¶ 17, 301 Mont. 472, 10 P.3d 813 (secondary insurer not liable to indemnify until underlying litigation determined insured's liability in excess of primary coverage). While mere complaint allegations generally trigger the duty to defend, the duty to indemnify generally does not arise until (1) preliminary factual investigation and technical legal analysis, often requiring separate declaratory judgment, confirms coverage and (2) facts either undisputed or adjudicated between the insured and third-party claimant determine the extent of the covered liability. See Freyer , ¶ 27. The duty to indemnify is thus significantly narrower than the duty to defend. Freyer , ¶ 37.
*949 ¶47 Except to the extent otherwise provided by statute, insurance policies are contracts governed by generally applicable contract law. Freyer , ¶ 27 ; Fisher ex rel. McCartney v. State Farm Mut. Auto. Ins. Co. , 2013 MT 208, ¶ 25, 371 Mont. 147, 305 P.3d 861. Long before enactment of §§ 33-18-201 and 33-18-242, MCA (UTPA), insureds could sue insurers in contract at common law for breach of express and implied contract duties. See Freyer , ¶¶ 24-31, 42-43 ; Fisher , ¶ 25. Implied as a matter of law in every contract is a covenant of good faith and fair dealing requiring "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Section 28-1-211, MCA (codifying common-law principle); Morrow v. Bank of Am., N.A. , 2014 MT 117, ¶ 31, 375 Mont. 38, 324 P.3d 1167 ; Story v. Bozeman , 242 Mont. 436, 449-50, 791 P.2d 767, 774-75 (1990), overruled in part on other grounds by ***341 Arrowhead Sch. Dist. No. 75 v. Klyap , 2003 MT 294, ¶ 54, 318 Mont 103, 79 P.3d 250 (in re liquidated damages); Universal Sales Corp. v. Cal. Press Mfg. Co. , 20 Cal.2d 751, 128 P.2d 665, 677 (1942) ; Brassil v. Md. Cas. Co. , 210 N.Y. 235, 104 N.E. 622, 624 (1914). Every party to a contract thus has "a justified expectation that the other will act in a reasonable manner" regarding contract duties and rights. Story , 242 Mont. at 450, 791 P.2d at 775. Accordingly, dishonest, arbitrary, capricious, or unreasonable conduct that deprives another party of the benefit of a contract is a breach of the implied covenant of good faith and fair dealing. Story , 242 Mont. at 448-49, 791 P.2d at 774-75. Accord Hardy v. Vision Serv. Plan , 2005 MT 232, ¶ 13, 328 Mont. 385, 120 P.3d 402 ; Talley v. Flathead Valley Cmty. Coll. , 259 Mont. 479, 489, 857 P.2d 701, 707 (1993). Breach of the implied covenant of good faith may or may not involve a breach of an express contract term. Story , 242 Mont. at 450, 791 P.2d at 775.
¶48 Based on the special degree of trust and reliance that insureds must have in insurers under the insurance contract, the implied covenant of good faith and fair dealing subjects insurers to implied contract duties of reasonable care, diligence, competence, honesty, good faith, and "conscientious fidelity" to their insureds. Safeco Ins. Co. v. Ellinghouse , 223 Mont. 239, 253, 725 P.2d 217, 226 (1986) (internal citations omitted). These implied duties require insurers to equally protect the interests of insureds on par with their own and, when considering an offer to settle within policy limits, to fairly consider an insured's potential risk of liability in excess of policy limits. Fowler v. State Farm Mut. Auto. Ins.Co. , 153 Mont. 74, 78-80, 454 P.2d 76, 78-79 (1969). Insurers thus have an implied contract duty to accept reasonable third-party settlement offers within policy limits. See Freyer , ¶¶ 46-47 ; Gibson v. W. Fire Ins. Co. , 210 Mont. 267, 275, 682 P.2d 725, 730 (1984) ; Fowler , 153 Mont. at 78-80, 454 P.2d at 78-79 ; Hamilton v. Md. Cas. Co. , 27 Cal.4th 718, 117 Cal.Rptr.2d 318, 41 P.3d 128, 132 (2002). Upon breach of the implied duty to settle, an insured may recover consequential damages in contract. Freyer , ¶¶ 31, 42-43 ; § 27-1-311, MCA (contract damages).
¶49 Consequential contract damages include the amount necessary to compensate the non-breaching party for any incurred loss or detriment of a type that, at the time of contract formation, would have been a reasonably foreseeable consequence of a breach of contract duty. See § 27-1-311, MCA ; Freyer , ¶ 31 ; Ehly v. Cady , 212 Mont. 82, 97-98, 687 P.2d 687, 695 (1984). Breach of the implied duty to settle within policy limits thus renders the insurer potentially liable for any genuinely contested adverse judgment against the insured in excess of policy ***342 limits. See § 27-1-311, MCA ; Gibson , 210 Mont. at 274-75, 682 P.2d at 730 ; Fowler , 153 Mont. at 79, 454 P.2d at 78-79.
¶50 Though generally sounding in contract, a claim for breach of the implied covenant of good faith, including breach of the implied duty to settle within policy limits, may also sound in tort, at the election of the insured, due to the special relationship of trust and reliance between the insured and insurer. See Story , 242 Mont. at 451-52, 791 P.2d at 776 (distinguishing tortious bad faith from contract bad faith claim). Accord Thompson v. State Farm Mut. Auto. Ins. Co. , 161 Mont. 207, 215-17, 505 P.2d 423, 427-28 (1973) (tortious bad faith), overruled on other grounds by *950 Watters v. Guar. Nat'l Ins. Co. , 2000 MT 150, ¶ 63, 300 Mont. 91, 3 P.3d 626 ;[3] Fowler , 153 Mont. at 78-79, 454 P.2d at 78-79 (tortious bad faith). See also Folsom v. Mont. Pub. Emps. Ass'n , 2017 MT 204, ¶ 21, 388 Mont. 307, 400 P.3d 706 (claimant choice "of any remedy cognizable at law or equity" regardless of whether based on "same predicate facts"); State ex rel. Larson v. Dist. Ct. , 149 Mont. 131, 136, 423 P.2d 598, 600 (1967) (breach of insurance contract may also be actionable in tort); Comunale v. Traders & Gen. Ins. Co. , 50 Cal.2d 654, 328 P.2d 198, 203 (1958) (breach of implied duty to settle sounds in contract or tort at election of plaintiff). Similar to the measure of consequential damages under a contract claim, the scope of compensable damages for tortious breach of the implied duty to settle generally includes, inter alia , the amount of any genuinely contested adverse judgment against the insured regardless of whether in excess of policy limits. See § 27-1-317, MCA (measure of tort damages); Thompson , 161 Mont. at 215, 505 P.2d at 427 ; Fowler , 153 Mont. at 78-79, 454 P.2d at 78-79.[4] Accordingly, long before enactment of § 33-18-242, MCA (independent UTPA claim), contractual and tortious breach of the implied covenant of good faith were, at the election of the insured, distinct common-law remedies available for breach of the implied contract duty to settle within policy limits. ***343 ¶51 In 1987, the Legislature enacted § 33-18-242, MCA, effectively abolishing first-party tortious bad faith claims and replacing them with a statutory bad faith claim based on alleged violations of § 33-18-201(1), (4) - (6), (9), and (13), MCA. See § 33-18-242(1), (3), MCA.[5] While expressly abolishing common-law tortious bad faith claims, § 33-18-242 expressly preserved the continued viability of common-law claims for "breach of the insurance contract. ..." Section 33-18-242(3), MCA. Accord Freyer , ¶¶ 24-31, 42-43 (analyzing claim for breach of implied common-law duty to settle); Story , 242 Mont. at 445-51, 791 P.2d at 772-76. Thus, a first-party common-law contract claim for breach of the implied covenant of good faith, including breach of the implied duty to settle within policy limits, is a species of claim for "breach of the insurance contract" preserved inviolate independent of the UTPA regardless of the availability of a similar statutory bad faith remedy under § 33-18-242, MCA.
¶52 While the modern focus on UTPA duties and the accompanying statutory bad faith remedy often overshadows preexisting common-law contract principles, the validity and consequence of an insured's unilateral settlement of a covered claim is purely a matter of generally applicable contract law not governed or affected by the UTPA. Generally *951 applicable contract law distinguishes between material and non-material breaches of contract. R.C. Hobbs Enters., LLC v. J.G.L. Distrib., Inc. , 2004 MT 396, ¶ 33, 325 Mont. 277, 104 P.3d 503 ; ***344 Norwood v. Serv. Distrib. Inc., 2000 MT 4, ¶¶ 29-34, 297 Mont. 473, 994 P.2d 25. A breach is material only if it effectively "defeats the essential purpose of the contract." Davidson v. Barstad , 2019 MT 48, ¶ 23, 395 Mont. 1, 435 P.3d 640 (quoting 23 Richard A. Lord, Williston on Contracts § 63:3 (4th ed. 2018) ); R.C. Hobbs , ¶ 33 ; Norwood , ¶¶ 29-34. Upon a non-material breach, the non-breaching party remains contractually bound to reciprocally perform as agreed but may sue for damages at law or other relief in equity. Davidson , ¶ 22 ; Norwood , ¶¶ 29-34 ; Flaig v. Gramm , 1999 MT 181, ¶ 27, 295 Mont. 297, 983 P.2d 396. In contrast, upon a material breach, the non-breaching party may sue for damages or equitable relief in any event but has the option of either continuing under the contract or, alternatively, cancelling or rescinding the contract without liability or requirement for reciprocal performance. Davidson , ¶ 22 ; R.C. Hobbs , ¶ 33 ; Norwood , ¶¶ 29-34 ; Cady v. Burton , 257 Mont. 529, 538, 851 P.2d 1047, 1053 (1993). See also § 28-2-1711(2), MCA ; Restatement (Second) of Contracts §§ 229, 235(2), 236 - 37, and 243 (Am. Law Inst. 1981). Whether a breach is material is generally a question of fact but is amenable to judgment as a matter of law if the pertinent facts are beyond genuine material dispute. Davidson , ¶ 23 ; Norwood , ¶ 35 ; M. R. Civ. P. 56.
¶53 Whether as a matter of law or fact, breach of the duty to defend is not the only conceivable way or means by which an insurer can materially breach the insurance contract. Due to the nature of the duty, breach of the implied duty to settle within limits (i.e., unreasonably refusing an offer within limits) is necessarily a material breach because it effectively defeats the essential purpose of the insurance contract-to protect the insured from the risk of uninsured liability. Thus, a breach of the implied duty to settle relieves the insured of reciprocal duties to the insurer, thereby freeing the insured to unilaterally settle with the third-party claimant. See Davidson , ¶ 22 ; R.C. Hobbs , ¶ 33 ; Norwood , ¶¶ 29-34 ; Cady , 257 Mont. at 538, 851 P.2d at 1053 ; § 28-2-1711(2), MCA ; Restatement (Second) of Contracts §§ 229, 235(2), 236 - 37, and 243 (Am. Law Inst. 1981). Accord Williams v. Geico Cas. Co. , 301 P.3d 1220, 1228 (Alaska 2013) ; SwedishAmerican Hosp. Ass'n v. Ill. State Med. Inter-Ins. Exch. , 395 Ill.App.3d 80, 334 Ill.Dec. 47, 916 N.E.2d 80, 96-102 (Ill. App. Ct. 2009) ; Rupp v. Transcon. Ins. Co. , 627 F.Supp.2d 1304, 1324 (D. Utah 2008) ; Weber v. Indem. Ins. Co. of N. Am. , 345 F.Supp.2d 1139, 1143-45 (D. Haw. 2004) ; Great Divide Ins. Co. v. Carpenter ex rel. Reed , 79 P.3d 599, 609-10 (Alaska 2003) ; Crawford v. Infinity Ins. Co. , 139 F.Supp.2d 1226, 1228-32 (D. Wyo. 2001) ; Wash. Ins. Guar. Ass'n v. Ramsey , 922 P.2d 237, 246-48 (Alaska 1996) ;
***345 Fireman's Fund Ins. Co. v. Sec. Ins. Co. of Hartford , 72 N.J. 63, 367 A.2d 864, 866-72 (1976) ; Stephen S. Ashley, Bad Faith Actions Liability & Damages § 3:39 (2d ed. 2018) ("a party in breach of a contract may not insist that the other party perform his obligations under the same contract"); 1 Allan D. Windt, Insurance Claims and Disputes § 3:11 at 227 (6th ed. 2018) ("[a]n insured ... should no longer be bound by contractual obligations if the insurer breaches ... its duty to act reasonably and diligently to safeguard the interests of the insured in connection with the settlement of a dispute in which the insured is being or could be sued").[6]
¶54 As usual with contract and tort claims, the insured, or assignee, has the burden of proving all elements of a contract or statutory bad faith claim predicated on breach of the duty to settle-that the insurer refused to accept a third-party settlement offer within policy limits, the refusal was unreasonable under the totality of the circumstances and applicable law, and the extent to which the *952 unilateral settlement was a reasonable settlement amount under the totality of the circumstances. See §§ 26-1-401 through -403, MCA. Accord Freyer , ¶¶ 44-53 (affirming summary judgment in favor of insurer on breach element of asserted common-law contract claim). As subsumed in the breach element in the insurance context, an insurer's refusal to settle within policy limits is not a breach of the implied contract duty to settle if the insurer had "a reasonable basis in law or fact to contest the claim or the amount of the claim." Freyer , ¶ 47 (citing White v. State ex rel. Mont. State Fund , 2013 MT 187, ¶ 24, 371 Mont. 1, 305 P.3d 795 ; Palmer by Diacon v. Farmers Ins. Exch. , 261 Mont. 91, 102, 861 P.2d 895, 901 (1993) ; Ellinghouse , 223 Mont. at 248, 725 P.2d at 223 ). The UTPA similarly protects insurers regarding statutory bad faith claims. See § 33-18-242(5), MCA.
¶55 In either scenario, it is the exclusive province of the court to determine material questions of law. Section 26-1-201, MCA. See also M. R. Civ. P. 56. If the reasonableness of an insurer's refusal to settle necessarily turns on a question of law, then the reasonableness of that refusal is a matter of law for exclusive determination by the court.
***346 Freyer , ¶¶ 48-53 ; Redies v. Attys. Liab. Prot. Soc'y , 2007 MT 9, ¶¶ 28-50, 335 Mont. 233, 150 P.3d 930. In the absence of a genuinely contested third-party liability judgment against the insured due to a unilateral settlement without insurer approval, the measure of compensatory damages, which the insured or assignee has the burden of proving, is the extent to which, if any, the unilateral settlement was reasonable under the totality of the circumstances. See § 27-1-302, MCA ; Abbey/Land II , ¶ 34 ; Tidyman's I , ¶¶ 41-42.[7] In this context, reasonableness is "an objective determination" under the totality of circumstances as to whether, or to what extent, if any, the unilateral settlement falls "within a reasonable range of what an arms'-length negotiation would [likely] have produced" and the value of settlement "to a prudent uninsured. ..." See Tidyman's Mgmt. Servs. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh , 2016 MT 201, ¶ 17, 384 Mont. 335, 378 P.3d 1182 ( Tidyman's II ).
¶56 Thus, upon an alleged breach of the duty to settle, an insured may unilaterally settle a third-party claim and thereafter assert a breach of contract or statutory bad faith action against the insurer for damages. Peris v. Safeco Ins. Co. , 276 Mont. 486, 489-92, 916 P.2d 780, 782-84 (1996). Incident to the unilateral settlement, the insured may further confess judgment to the third party in the amount of settlement in return for a non-execution covenant. See Abbey/Land II , ¶¶ 41-42 (assignment of first-party claim to third party in return for non-execution covenant not per se collusive or unreasonable); Hamilton , 117 Cal.Rptr.2d 318, 41 P.3d at 132 (insured may assign claim against insurer upon material breach of policy regardless of whether barred by the policy). However, those choices come with significant risk. Whether on a subsequent first-party claim against the insurer for breach of contract or statutory bad faith, or a bifurcated first-party declaratory judgment claim against the insurer subsequently pled by amendment in conjunction with the underlying third-party liability claim against the insured tortfeasor, see Tidyman's I , ¶¶ 6, 10, 12, the insured, in accordance with the ordinary burden of proof and available defenses, takes the risk of affirmatively proving the alleged breach of duty, ***347 causation, and the resulting damages by separate claim against the insurer. If the third-party claimant further agrees not to execute against the insured in return for a confessed judgment and assignment of rights, the third-party thereby assumes the risk of proof otherwise on the insured.
¶57 Here, in a narrow holding, the Court correctly recognizes that, due to the conflated pleading and litigation below, the assignees, standing in the shoes of the insured, did not expressly plead a claim for breach of contract or statutory bad faith against the insurer in the context of the underlying third-party liability action from which the *953 adjunct "reasonableness hearing" arose. I agree. The parties' conflation of common-law and UTPA remedies, the shifted burden of proof resulting from the erroneous application of a presumed measure of damages, and the parallel-pending piecemeal litigation of related issues in federal court certainly preclude us from providing complete relief and resolution of the larger dispute on appeal here. However, we are not responsible for the conflated and piecemeal manner of litigation followed by the parties across multiple forums. We can and should appropriately address what is properly before us and let the chips ultimately fall where they may as a result of other pending or subsequent litigation between the parties, whether in federal court, a separate state court action, or on amendment of the pleadings on remand below.
¶58 While the parties did not litigate the breach element of what is essentially a disputed first-party contract or UTPA claim below, they did in fact litigate the essence of the damages element of such claims upon the so-called "reasonableness hearing" below. Regardless of how expressly pled or otherwise asserted below, the underlying legal basis asserted for enforcement of the stipulated judgment against New York Marine upon the "reasonableness hearing" was essentially a first-party common-law contract or statutory bad faith claim, albeit incomplete, asserted by the insured, through its assignees, against the insurer for the presumed measure of damages caused by the insurer's alleged breach of duty to settle within policy limits. See Tidyman's I , ¶¶ 21-33 and 38-41 (recognizing presumed measure of damages and "reasonableness hearing" procedure in context of *954 first-party declaratory judgment action against insurer in re coverage and alleged breach of insurer duty, as subsequently amended to third-party ERISA liability action against insureds). While it disputes that it breached the duty under the facts and circumstances of this case, New York Marine does not, and cannot, dispute that it had an implied contract and co-extensive statutory duty to accept a reasonable third-party settlement ***348 offer within limits. While it similarly disputes aspects of the coverage asserted by its insured, New York Marine similarly cannot and does not reasonably dispute on this record that its insured was at least at some measure of risk within coverage and limits.
¶59 Standing in the shoes of the insured, the third-party assignees sought adjudication of the reasonableness of the claimed amount of damages resulting from the insurer's alleged breach of duty to settle (i.e., the amount of the unilateral settlement). Upon notice and without demand for a jury trial, New York Marine voluntarily sought leave to intervene, and in fact did so, to at least contest the reasonableness of the amount claimed by its insured, through its assignees, as the measure of damages resulting from the alleged breach of duty. Thus, whether viewed as predicated on a breach of contract duty or similar UTPA duty, the duty element of the implied claim was and is not subject to dispute, the breach element of the claim remains in dispute, and the parties actually litigated causation of damages on the factual merits.
¶60 It is important to note that, as a purported alternative to disposition by summary judgment or trial, we fabricated the purportedly more limited "reasonableness hearing" procedure from whole cloth as a means for insurers to contest the reasonableness of confessed judgments predicated on breach of the duty to defend. See Tidyman's I , ¶¶ 40-41. Regardless of procedural nomenclature, we did so without specification of procedural "parameters," other than a shifted burden of proof, clearly recognizing, with citation to a statutory damages standard, that the substantive focus of the procedure is on the damages claimed (i.e., the amount of the confessed judgment) as a reasonable measure of damages for the alleged breach of insurer duty. Tidyman's I , ¶¶ 40-41. Aside from the erroneously shifted burden of proof, the only significant procedural difference between the procedure followed in this case and the procedure endorsed in Tidyman's I is that, prior to seeking "approval" of the confessed judgment and a resulting "reasonableness hearing," the plaintiffs in this case did not first, as in Tidyman's I , seek leave to amend the pleadings in the third-party liability action against the insured to assert a first-party declaratory judgment action against the insurer (which resulted in the ancillary declaratory judgment action with an adjudication of the alleged breach of insurer duty and related reasonableness hearing). See Tidymans II , ¶¶ 10-16 ; Tidymans I , ¶¶ 6, 10, 12, 23-33.
¶61 In any event, despite the shifted burden of proof resulting from the erroneous application of a presumed measure of damages in this case, the extensive evidentiary record resulting from the procedure ***349 requested by the parties manifests that New York Marine had a full and fair opportunity to challenge the extent to which, if any, the stipulated judgment was a reasonable measure of damages resulting from the alleged breach of duty to settle. The process afforded the opportunity for reasonable discovery, presentation of evidence, and prejudgment briefing. Procedural nomenclature notwithstanding, the "reasonableness hearing" was in every meaningful regard the substantive equivalent of a bench trial on damages on the particular record in this case. There is no record indication that the erroneously shifted burden of proof prejudiced New York Marine on the substantive merits in any substantial regard. Under these unique circumstances, the fact that we have generally defined the "reasonableness hearing" as an abbreviated process rather than a trial is of no substantial consequence here.
¶62 Consequently, re-litigation of the amount of damages resulting from the alleged breach of duty to settle under the ordinary burden of proof, whether in the parallel-pending federal litigation, a separate state court action, or upon amendment of the pleadings on remand in this case, would serve no substantial purpose other than additional delay and expense in furtherance of a second bite of the proverbial apple. While I concur that the parties have yet to litigate to adjudication whether the insurer indeed breached its duty to settle as alleged, I would thus go beyond the Court's limited holding and further hold that the amount determined reasonable by the District Court below was in substance a full and final adjudication of the damages resulting from the alleged breach of duty, thus implicating collateral estoppel in the event of any parallel-pending or subsequent adjudication as to whether New York Marine breached its implied contract or parallel UTPA duty to settle. Such holding would be expressly limited to the anomalous course of litigation and circumstances of this case without authorization or endorsement of any similar use of a "reasonableness hearing" in future cases involving an alleged breach of duty to settle.
¶63 I concur.
Justice Ingrid Gustafson and Justice James Jeremiah Shea join in the concurring opinion of Justice Sandefur.

Pending parallel to this matter is N.Y. Marine & Gen. Ins. Co. v. Junkermier, Clark, Campanella, Stevens, P.C. , No. CV-14-83-GF-BMM, 2015 WL 12748267, District of Montana, United States District Court. Though not entirely clear on the briefing and record before us, the matters at issue in the federal court litigation may or may not encompass or otherwise bear on the issue of whether New York Marine breached its statutory or implied contract duty to settle within policy limits as alleged here but not yet litigated on the merits. If not, the issue would remain as the central outstanding issue in any subsequent UTPA (Unfair Trade Practices Act) or contract action asserted by the assignee of the insured against the insurer.

Breach of the duty to defend peculiarly results in the immediate unprotected exposure of insureds to third-party liability, thus warranting that insurers bear the risk and extraordinary peril of unjustifiably abandoning insureds. See Abbey/Land II , ¶¶ 34-35, 41 ; J & C Moodie , ¶¶ 21, 33 ; Staples , ¶¶ 27-34.

Shilhanek v. D-2 Trucking, Inc. , 2003 MT 122, ¶ 21, 315 Mont. 519, 70 P.3d 721 in turn overruled Watters on other grounds.

In contrast to the contract remedy, tortious bad faith subjects the tortfeasor to a broader measure of tort damages as well as punitive damages upon appropriate proof. See § 27-1-317, MCA (tort damages); Stephens v. Safeco Ins. Co. of Am. , 258 Mont. 142, 145-46, 852 P.2d 565, 567-68 (1993) ; Story , 242 Mont. at 450-51, 791 P.2d at 775-76 ; Lipinski v. Title Ins. Co. , 202 Mont. 1, 13-15, 655 P.2d 970, 976-77 (1982) ; First Sec. Bank of Bozeman v. Goddard , 181 Mont. 407, 418-23, 593 P.2d 1040, 1046-49 (1979). Compare § 27-1-311, MCA (contract damages).

The Legislature seemingly intended that § 33-18-242, MCA, would similarly abolish and supersede our previously recognized implied private right of action for damages based on violation of § 33-18-201(6), MCA. See § 33-18-242, MCA ; compare Klaudt v. Flink , 202 Mont. 247, 250-52, 658 P.2d 1065, 1066-67 (1983), overruled in part on other grounds by Fode v. Farmers Ins. Exch. , 221 Mont. 282, 287, 719 P.2d 414, 417 (1986), superseded in part by § 33-18-242, MCA. See also O'Fallon v. Farmers Ins. Exch. , 260 Mont. 233, 243-44, 859 P.2d 1008, 1014-15 (1993) (noting legislative intent and effect of § 33-18-242, MCA, to "limit[ ] the types of claims that could be brought based on claim settlement practices"). Despite our anomalous reference to it as a common-law claim, see O'Fallon , 260 Mont. at 243-44, 859 P.2d at 1014-15 (characterizing claim as "common law cause of action" predicated on violation of § 33-18-201, MCA ) the Klaudt claim is more properly characterized as a private right of action implied by § 33-18-201, MCA. See Klaudt , 202 Mont. at 250-52, 658 P.2d at 1066-67 (stating issue as whether § 33-18-201, MCA, "confers a private cause of action" and holding that it affirmatively "create[d]" statutory duties to private parties the breach of which is "the basis for a civil action"). See also Mark Ibsen, Inc. v. Caring for Montanans, Inc. , 2016 MT 111, ¶¶ 41-42, 383 Mont. 346, 371 P.3d 446 (distinguishing statutorily implied tort claims based on violations of statutory duty from common-law claims based on violations of independent common-law duties).

The Court sweepingly dismisses various cited authority from other jurisdictions on the ground that those states do not have a statutory bad faith claim similar to § 33-18-242, MCA. Opinion, ¶ 38. This dubious distinction fails to recognize that the existence of an independent UTPA remedy has no bearing on the common-law contract remedy as expressly preserved by the UTPA. See § 33-18-242(3), MCA ; Freyer , ¶¶ 44-55. However, I have no qualm with disregard of this authority as support for a presumed measure of damages.

In the case of a prior adverse liability judgment genuinely contested between the insured and third-party claimant, the measure of compensatory consequential damages for breach of duty to settle generally is the amount of the adverse judgment as a matter of fact regardless of policy limits. See § 27-1-302, MCA ; Tidyman's I , ¶ 25 ; Staples , ¶¶ 27-34 ; Gibson , 210 Mont. at 274-75, 682 P.2d at 730 ; Fowler , 153 Mont. at 79, 454 P.2d at 78-79.